United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Be seated. I want to welcome everyone to Richmond and the Fourth Circuit Court of Appeals this morning. I look forward to hearing your cases. The first one is LaMar v. Ebert. Mr. Zuge, did I pronounce that correctly? You did, yes. Good morning, Your Honors. May it please the Court. My name is Jack Zuge, counsel for the appellant, Mr. Derek LaMar. The case before you today is about a man who, over the last 20 years, has maintained that he is innocent of the crime for which he was convicted. To demonstrate his innocence, Mr. LaMar has tried to rely on two components of Virginia's post-conviction DNA testing statute. First, Section 327.1A, which authorizes Virginia trial courts to order scientific testing of biological evidence in cases that resulted in a felony conviction. Let me ask you this at the outset. Is this a facial challenge or as applied? As applied, Your Honor. Then why didn't Rooker-Feldman get you? Well, because, Your Honor, we are not challenging that the District Court, or I'm sorry, the State Court opinions were incorrect. We're assuming for purposes of this lawsuit that they were correct. What we're challenging is that the requirements applied by the State of Virginia are constitutionally inadequate under the Due Process Clause. Well, suppose we agree with you, then the statute is unconstitutional and you've got no way to get your DNA tested. Well, we're not, Mr. LaMar's petition is not that all of the requirements are unconstitutional as applied. What he's alleging is that, in particular, the ban on retesting of biological evidence violates the Due Process Clause. Retesting violates it. Retesting biological evidence, that's correct. He wants to have a retest of what was tested before. That's correct, Your Honor. And so what he's asserting here is that he has a cognizable procedural due process claim. And as a preliminary matter, he has to essentially prove three elements. And the first is that he has a cognizable liberty interest. And in this case, it's not disputed that Mr. LaMar has satisfied that first element. The interveners have acknowledged in their briefing on page 17 to 18 that Mr. LaMar does have a liberty interest in attempting to demonstrate his innocence through the pursuit of a writ of actual innocence. And, indeed, that is precisely the type of liberty interest considered in LaMar. So the only real element in dispute in this case is the third element of Mr. LaMar's procedural due process claim, which is whether the procedures in Virginia are constitutionally inadequate to vindicate that substantive right provided by the Commonwealth. Has there been any challenge to the validity of the first DNA test? Anything wrong with the science? No, Your Honor. He's not challenging that that first test was incorrectly administered. But what he is challenging is that under the Medina test, which asks whether in operation any procedure in Virginia transgresses fundamental fairness, what he's asserting is that the interpretation of a complete ban on retesting of evidence violates fundamental fairness in operation, most notably because it cuts against the core objective of our criminal justice system and, indeed, the purpose of the DNA testing statute, which is to ensure the accuracy of our convictions. And in this case, that objective is especially important because it is now possible to determine whether biological tissue matches with certainty the suspect or, in this case, the convicted person. And Judge Ludig wrote in the Harvey opinion that short tandem repeat DNA testing He'd be disappointed if I didn't tell you it was pronounced Ludig. Apologies to Judge Ludig. Judge Ludig wrote in the Harvey opinion that short tandem repeat DNA testing, which is one of the tests that Mr. LaMar has sought in his petitions, represents an exponential increase in the reliability of forensic identifications over earlier techniques, and, indeed, current generation STR systems have matching probabilities on the order of 1 in 1 quadrillion. That's a 1 followed by 15 zeros. And I think that level of accuracy matters in this case because Well, they said the first one was 2 million or something. That's correct. The 1998 test That seems to be kind of minuscule. Well, Your Honor, I think the distinction The difference in accuracy matters in this case because if this court wanted to rule in favor of Mr. LaMar, it would not have to say that any time technological advancements in testing procedures occur that all biological evidence in every case needs to be retested using the modern, more accurate method. There is a limiting principle at play here, and that is at some point in time, the technology advances to the point where the DNA, the modern DNA test can identify the source of the biological material to a statistical certainty. And with respect to the STR test, that point in time is now. So in this case, we're comparing two tests where the test conducted in 1998, due to technological shortcomings, is not capable of essentially ruling everyone else out. But the modern test can affirmatively rule everyone else. Our position is that the Due Process Clause requires that we close that gap and utilize the tools at our disposal. Is that a substantive due process claim or a procedural due process claim? It's a procedural claim, Your Honor, because we are Is that addressed by the district court? The district court's opinion sort of mixes its analysis, I would say. It what? Mixes its analysis. Mixes it? Yes, Your Honor. And what I mean by that is it You're saying it makes an erroneous analysis? That's correct. Our position is that the district court order from which we are appealing misconstrued Mr. Lamar's claim as a substantive challenge. So the district court did not address the procedural due process claim, right? That's correct. That's what you want us to do is, I think, is remand until the district court has to It has to consider the procedural due process claim. I think that's correct, Your Honor. That is certainly Which is what we told it to do before. That's right. Isn't there enough in the record from the judge's ruling to reach the procedural due process claim now? I think that's correct, Your Honor, as well. That we could do it now? Yes. Well, why would we do it now if the district court hadn't done it? We normally are a court of review, not of first view. I don't disagree, Your Honor. I think both options What do you want us to do? Well, our position is that You told Judge Floyd you'd want us to review it now. And I don't know whether you're sticking to that or not. I am sticking to that. I think, Your Honor Do you want us to review it now? I think the best remedy in this case would be yes. That this court, on the record and with the precedent cited in our brief, could rule on the procedural due process issue. And, in fact, issue or remand the case with instructions to grant summary judgment in favor of Mr. Lamar. I might have had a little sympathy for your position. He hadn't addressed it. But I'm not so sure I have much sympathy for us doing it in the first instance. So I think you may be on the wrong path if you want me on your side. Well, Your Honor, if the opinion of this court is that the district court did not sufficiently address the procedural claim, and I think there is merit to that opinion, I think if you look back at the order, it's quite clear that It didn't address it at all. It didn't really address it at all. That's correct. Which is striking in that the four circuit's prior opinion in this case actually listed the allegations that Lamar was alleging, including that he was alleging that his procedural right to due process was violated because of this blanket prohibition on retesting. The district court really didn't evaluate that claim and instead misconstrued it as a substantive claim. If I could for a moment return to the issue of whether the fundamental fairness in operation was I thought also you wanted some stuff, some things tested that have never been tested. So Mr. Lamar You said earlier you just wanted retesting. That's correct, Your Honor. I thought also there were some allegations in here about wanting testing of evidence that has never been tested. That's correct. So you're abandoning that? Yes. You're abandoning the effort to retest? We are not retesting. The subject of this lawsuit is challenging the constitutional requirements used to justify the denial of the retesting evidence, which was the sanitary napkin. We are not challenging the requirements on a constitutional basis that were used as a justification to deny his petitions for testing of the hair, which was never tested in this case. So this appeal is about the retested evidence, the sanitary napkin. And the reason, Your Honor, is that we know that a blanket ban on retesting evidence is unconstitutional, at least in part is because the Medina court made clear that it is appropriate to consider whether the challenge procedure is consistent with contemporary practice. And when we look at contemporary practice in this case, we find that Virginia is virtually unique in prohibiting retesting. In fact, 47 states that have these post-conviction DNA testing statutes either explicitly or implicitly permit retesting of evidence pursuant to newly available technologies, including every state in this circuit. So, for example, just to provide an example, North Carolina permits retesting when it would, quote, provide results that are significantly more accurate. How do you prove that retesting is important enough? How do they establish that? Well, I think, Your Honor, that goes back to the points I tried to make earlier, which was that when you are comparing two tests and the previous test leaves open the possibility, however remote, that it was somebody else. In the modern test that could be used. But how is that shown in the record? Do you have to have a hearing or something to have experts come in and testify about the testing methods? Or do you just make allegations in the complaint? Or what do you do to show that the new testing procedures are dramatically better than the old testing procedures? Your Honor, I think in this case it's not disputed about the level of accuracy of the STR method. Judge Ludwig actually collects a lot of the scientific support for that position and includes it in footnote one of the Harvey opinion. And even the Supreme Court in Osborne, all three of the opinions acknowledged that the STR method is so highly discriminating and inaccurate that I don't think it would really be an issue of debate that the STR method would somehow not have the level of accuracy sufficient to warrant retesting in this case. And, in fact, the court in Osborne even noted that when it was listing typical requirements of constitutional DNA testing statutes, that these statutes often require the testing to, quote, have been technologically impossible at trial. That's the circumstance of this case. The STR method was technologically impossible at trial and to- When was it developed? I believe it became available in Virginia in 2001, which is the same year that the DNA testing statute was passed. And so to not use that tool at its disposal to ensure the accuracy of its conviction violates fundamental fairness and, therefore, the due process clause. But haven't you challenged this same issue in the state court? Well, in state court, what he's done is he's petitioned for retesting and that at each juncture, I believe he submitted four petitions, and at each junction, the state court denied those petitions, at least in part on the basis that the evidence was already tested. And so this is the first time that Mr. Lamar has challenged the constitutional adequacy of that interpretation of Virginia law. But, Your Honors, I would like to say something about the second reason that this statute is unconstitutional, and that's because it unfairly requires clear and convincing evidence to prove the core requirements, but does not permit a discovery mechanism for a petitioner to obtain the facts necessary and, therefore, assert categorically each requirement under the statute. Well, what would discovery look like in this case? Because what you're asking is to have a sample retested. It's in the state's custody. Why do you need discovery? I mean, what would it be? Well, Your Honor, I think it could take the form of some sort of interrogatory response where the state could be compelled to say what has happened to this evidence in the intervening period since trial. On the current record, Mr. Lamar is not able to state or assert categorically in whose possession this evidence has been specifically, whether it was transferred, whether it has been altered or tampered with in some way under the meaning of those terms in the statute. And so this is important here because in 2001, Mr. Lamar's very first petition was denied in part just on those grounds, that he failed to assert the facts sufficient to establish elements in subsection A of the statute, which includes a chain of custody requirement. And so because the evidence is in the state's possession, unless Mr. Lamar has a discovery mechanism, he's essentially at the whims of whether the state… So he doesn't know how the chain of custody works. That's right. That's right. He doesn't know what chain of custody is, and he has no method to determine the answers to that question because he doesn't have possession. Would you say that burden ought to be on the state then? I think that the burden is formally on the petitioner, but he just simply needs a mechanism to gather the facts sufficient to meet that. He's willing to accept the burden if he gets discovered. That's right. That's correct, Your Honor. And so in this case, because Mr. Lamar has no method to assert the facts, his right to pursue a writ of actual innocence is essentially illusory because he has no method to meet that requirement under the statute. And I see that I'm almost out of time, Your Honor. I'm happy to answer any questions. Otherwise, I can take my seat. Thank you. Thank you. You've reserved some time. Ms. Kalin, good to have you here. Good to be here, Your Honors. Michelle Kalin for the intervener of the Commonwealth. Your Honors, this case involves a person who was found guilty of rape after a fair trial and a fair appeal. Now, the evidence supporting Mr. Lamar's conviction included the victim herself identifying Mr. Lamar as her assailant, another witness, a security guard, also identifying Mr. Lamar. What's the purpose of the DNA statute? Virginia's DNA statute? Yeah. It provides a vehicle to seek a writ of actual innocence, Your Honor. Okay. And how is your position in this case supporting that purpose? So because there's no substantive due process right to retesting, the Supreme Court foreclosed that in Osborne, and Mr. Lamar does not make that here. The question is whether Mr. Lamar has a procedural due process right. Right. And where is that addressed in the district court opinion at all, the procedural due process? So I would direct the Court's attention to JA 149 through 150, and that's where the district court specifically said that it found no precedent to suggest that procedural due process requires an inmate be provided to access with STR testing. So the district court did address procedural due process in its opinion. But I think it's important to keep in mind the test that Mr. Lamar did receive, the biological evidence test that he received, the DQ alpha test. The accuracy of that test identifies Mr. Lamar as the assailant with an accuracy level of 1 in 2.1 billion, which means the likelihood that the assailant was somebody other than Mr. Lamar is 1 in 2.1 billion at best for Mr. Lamar. And to put that into context, there are only 300 million people in the United States. So what we're talking about. What's your main concern? What's the Commonwealth's main concern with not just going ahead and testing it and getting it over with? If he's guilty, he's guilty. He can't hurt you, right? He's still guilty. Well, the harm at issue here, it's important to recognize that it doesn't just apply to Mr. Lamar. There's currently a backlog. So there's the issue of finality of convictions, Your Honors. You're standing on principle. You just don't want to do it. Respectfully, Your Honor, the harm to the Commonwealth extends far beyond just Mr. Lamar. In Virginia, there is a backlog of rape kits of 15,000. And if there's a recognition of this broad right to retesting when there's been highly accurate testing previously, that would further expand that backlog such that individuals, victims, and defendants who have not been convicted of any crimes will have to wait longer for the testing results in their cases. So the harm extends further than just Mr. Lamar. But there's also the interest that the Supreme Court recognized in Osborne. How complicated is this retesting or testing? The STR test? The STR test is relatively quick. How long does it take to do it? What does relatively quick mean? It depends on the particular. A week, a month? Usually anywhere between a couple of hours to a couple of days. Okay. And how long have you all been fighting this? In terms of, well, Mr. Lamar was convicted back in 1998. Right. You've been fighting for 17 years. You've got three attorneys at the table and more in the back there. Well, the interest of the court. A lot of time and expense. Which for defending the constitutionality of Virginia statutes is warranted, Your Honor. And Virginia decided, so because there's no substantive due process right, Virginia. Isn't it also warranted to make sure that justice is done? Of course, Your Honor. And it was done with a fair trial and a fair conviction that Mr. Lamar did receive. Let's assume we could reach the procedural due process issue now without remanding it back. The test would be fundamental fairness test, which was adopted in Osborne, which comes back, is preceded by Medina. The point I'm trying to make is the Matthews versus Eldredge test is not applicable to analyzing the procedural due process in DNA cases. Do you agree with that? That's correct. Once there's been a conviction already, the standard is not the same as, the liberty interest is not the same as somebody who has not yet been subject to a fair trial. And Mr. Lamar was subject to a fair trial and subject to DNA evidence that was highly accurate. So what we're talking about here is a question of retesting. Retesting is the marginal difference between the DQ alpha testing that had a level of accuracy of 1 in 2.1 billion, meaning the likelihood that the assailant was someone other than Mr. Lamar is at best for Mr. Lamar, 1 in 2.1 billion. And the STR testing, which is accurate to a level of 1 in 400 billion. Now, if the process, Mr. Lamar received all process he was due to the extent So it's 200 times more accurate? It's 200 times more accurate. But we're talking about margin of difference. The question is whether somebody who's already been convicted, subject to a fair trial and a fair appeal, whether the process he's entitled to, is that marginal difference. And the process he's entitled to is minimal. It's processed fundamentally. He can state a due process claim if the process that exists is fundamentally inadequate to vindicate the substantive rights. We would submit that that marginal difference in testing does not rise to that, does not reach that level. Close enough for government work, kind of. It's close enough for somebody who's been So that's what you're saying, it's close enough. For somebody who's been convicted, subject to a fair trial and a fair appeal, yes, Your Honor, it meets the Osborne test. Can you explain again your 15,000 rape kit backlog explanation earlier? Because I didn't really follow why that mattered to not spending a couple hours testing Mr. Lamar's. Of course, Your Honor, because DQ Alpha was a test that numerous individuals received, a very accurate test, both at the time and today. So if Mr. Lamar is entitled to retesting, anybody who received DQ Alpha testing is going to come out of the woodworks and seek retesting. And so because there's already an existing backlog of testing of rape kits, the influx of additional testing is then going to compete with the existing backlog. If you all had spent the last 17 years in your time and resources and money not fighting Mr. Lamar, you could put it into the 15,000 backlog and you wouldn't have such a backlog. Well, respectfully, Your Honor, I mean, the question here is a question of the constitutional validity of Virginia statutes. Is that stuff about the 15,000 and all that, is that in the record here, or are you just up here telling us this stuff? No, Your Honor, it's not in the record, but it goes to the question of the harm that the Commonwealth would experience. It's not just an issue of whether or not Mr. Lamar should spend the resources to give him the test. There's a broader harm that would exist. And I would also like to highlight the interest in finality of criminal convictions. Mr. Lamar was subject to a fair trial. He was subject to a fair appeal. So to the extent we say that there's an interest in retesting of what was previously highly accurate, retesting of evidence that was previously subject to highly accurate testing would open the door to much greater harms. Now, regarding the liberty of the district court to address that procedural due process, so the district court addressed procedural process at JA 149 through 150. You're saying it adequately addressed it? It addressed it. If we don't think it sufficiently addressed it, do you think we ought to remand it or we ought to go ahead and assess it ourselves in the first instance? We would not be opposed to a remand, Your Honor.  We would not be opposed to a remand, Your Honor. You wouldn't be opposed to a remand? No, Your Honor. But we don't think it's necessary. We don't think a remand is necessary. This procedural due process claim fails for the reason that Mr. Lamar has failed to assert. That's what you're telling us. It's like frivolous. We ought to just go ahead and throw it out and close the books on this. That's correct, Your Honor, because Mr. Lamar, under the Osborne test, has to show that the procedure that he received is so inadequate that it's fundamentally inadequate to vindicate substantive rights. His liberty interest after being convicted of a fair trial is small, and there's only a minimal process that needs to be met in order to vindicate that right. Mr. Lamar four times went to the circuit courts in Virginia, and they dismissed his motion not just for the reason of retesting, but the 2001 motion was dismissed because it was unsworn, which Mr. Lamar does not contest the constitutionality of that. Was he representing himself back then? For that first one. For the second one, he was represented by counsel, and that, too, was dismissed for reasons beyond just the retesting. It was dismissed because he failed to show undue delay. It was also dismissed because Mr. Lamar failed to show that the evidence he sought was not cumulative. The third motion that he brought was dismissed because it was duplicative of a prior motion. Mr. Lamar does not contest the constitutionality of that reason for dismissal, and the 2011 motion was likewise dismissed for a constitutional reason. And I will note, Your Honor, that we disagree with Mr. Lamar's representation of Virginia statute as setting forth this blanket bar on retesting. And I'll direct the Court's attention to the 2011 decision on his motion for retesting where the circuit court there in Virginia said that the result might be different if Mr. Lamar were able to cast into doubt the adequacy of the DQ-alpha test, the test that was used for him. How is he supposed to do that without discovery? Because discovery would not go to the accuracy of the DQ-alpha test. He himself notes that he does not contest the accuracy of the DQ-alpha test or the administration of that test to the DNA evidence in his case. Have there been petitioners that have been able to get their DNA retested under this statute? Yes, Your Honor. So I would direct the Court to a successful writ of innocence this past March in the Virginia Supreme Court at Inouye, Watford, which is 295 VA 114, and that was a successful writ of innocence. Saliva is not the only one, right? That's correct, Your Honor. So the Virginia Supreme Court ordered a retesting in there? That's correct, of saliva evidence. Under this statute? Yes, yes, Your Honor. So I think it's important to recognize that the question at issue here is not just Mr. Lamar and retesting for him, but the broader interest in retesting any time there's any sort of evolution of technology. And I would emphasize that this Court in Osborne stated that the availability of technologies not available at trial cannot mean that every conviction or every criminal conviction involving biological evidence is suddenly cast into doubt. Mr. Lamar was convicted following a fair trial. He received a fair appeal, and he was convicted subject to DNA evidence that was highly accurate at the time. Referring to Deque Alpha as obsolete or antiquated does not properly reflect how accurate that test, in fact, was. And all we're talking about here from a procedural due process perspective is that marginal difference between an accuracy rate of 1 in 2.1 billion, when there are only 7 billion people in the world, and an accuracy rate of 1 in 400 billion. Which is 200 times better. It's 200 times better. But you said it's marginal. Well, because the question is what level of procedure. Because we think the first one's accurate enough. That's correct, Your Honor. It's accurate to a sufficient high level to be a fair trial for somebody who was free before, right, and had the Matthews entitlement to procedural due process. So it surely meets the procedural due process set forth in Osborne once someone was subject to a fair trial and a fair appeal. So unless the panel has any additional questions, I will yield my time and ask that this confirm. Thank you. Thank you. Mr. Zuge. Thank you, Your Honor. I wanted to address directly one point made by the intervener, and that is this is actually something that the district court said in its opinion, and that is this case might be different if the previous test was discredited. The 1998 test is discredited in the sense that it's no longer the favored testing method. The STR method is now favored because it is by orders of magnitude more accurate. Now, the district court seemed to apply that this case might be different if the prior testing was somehow scientifically discredited, such that it's no longer considered scientifically reliable. But I don't think that quite solves the due process problem in this case either, Your Honor. For example, under the Virginia statute, the use of any prior testing precludes the retesting of evidence, and I don't think there's any basis on the record before you that to conclude that in some instances the Virginia state courts have allowed retesting, certainly not as it's applied to Mr. Lamar. And, in fact, if you look back at the 2011 petition that denied the order denying his petition, it states quite clearly that as a basis for not testing the sanitary napkin is because it was retested. And so one can imagine a situation where the prior test had a matching probability in the order of, you know, one in a billion or one in a million or one in a hundred. And so long as that test does what it purported it to do, it hasn't been scientifically discredited. And I don't think any fair reading of the due process clause would allow this court to conclude that banning retesting in those circumstances would not give rise to a constitutional violation. Additionally, one point that the interveners have made is that they have an interest in sort of protecting state resources and administrative costs. And, in fact, Justice Thomas makes this point as well in his concurring Osborne opinion. And in that opinion, Justice Thomas highlights how North Carolina also had a similar backlog. But I think it's important to remember that even with that backlog, North Carolina, and I'll use that as an example because Justice Thomas did when he made that similar point, North Carolina's DNA testing statute expressly allows for the retesting of evidence because, as I said, it recognizes that there's a fundamental fairness here involved when there's an accurate test that can. How much does the retest cost? Is that in your record? I believe I'm not certain that this is in the record, but my understanding is it costs somewhere around $400. That's my understanding, although I admit that I'm speculating to some sense. But to put a finer point on this, Your Honor, like North Carolina, Virginia has on its own accord recognized the value of DNA evidence and its potential to exonerate those wrongly convicted just by virtue of passing the post-conviction DNA statute. So while states like Virginia do have an interest in creating rules that regulate testing, those rules need to pass constitutional muster. And in this case, the ban on retesting does not do so. And I would like to conclude on one final point that the interveners made, which was that Mr. Lamar's various petitions were denied for a variety of reasons. But I think the question that is before this Court, and in fact needs to be before this Court, is whether Mr. Lamar suffered a procedural due process violation. The question isn't really, even though he may have suffered a violation, was there some other justification that supported the state court's denial. And even if there was some other justification, those justifications aren't harmless in any way in this case. The Supreme Court has held that meaningful access to justice has been a consistent theme of due process jurisprudence. In this case, Mr. Lamar's petitions were dead on arrival because he was requesting the retesting of evidence. He was never afforded meaningful access, notwithstanding the other requirements under the statute. And I would also note that in this Court's prior opinion in this case, in the factual record, the Court had access to all of the state court denials and all the reasonings of those denials in the record before it. And even the Court recounted those reasons in the factual background of that opinion. But the Court did not conclude that those precluded Mr. Lamar from stating a viable procedural due process claim. And so, too, should this Court conclude that because Mr. Lamar's petitions had no likelihood of success, a constitutional violation occurred, and that violation is not somehow swept under the rug due to other state court rationales. Unless there are further questions, I respectfully ask that this Court reverse the order of the district court and remand the case. Thank you very much, sir. Thank you. We'll come down and re-counsel and then call the next case.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker